UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

TAURUS PROPERTY VENTURES, LLC,

Plaintiff,

v. CASE No. 8:05-CV-1037-T-23MAP

CITY OF PLANT CITY,

Defendant.
_____________________________________/

**REPORT AND RECOMMENDATION**

After Plant City rejected the Plaintiff's application for an adult-use permit because the proposed site was too close to another purported adult-use business, Plaintiff filed this action for injunctive relief, declaratory judgment, and damages claiming Plant City's regulatory scheme was unconstitutionally vague and overbroad. Weeks later, Plant City revised the ordinance and moved to dismiss the lawsuit as moot. With these changed circumstances the issue now is whether any Article III case or controversy still exists. After consideration, I find Plant City's revisions render Plaintiff's declaratory and injunctive demands moot but not the damage claim. Accordingly, I recommend the district judge deny the Plaintiff's motion for preliminary injunction and dismiss Plaintiff's equitable relief demands. As to Plaintiff's claim for damages, I recommend the district judge stay the matter pending the outcome of the Eleventh Circuit's anticipated *en banc* decision in *Tanner Adver. Group, L.L.C. v. Fayette County,* 429 F.3d 1012 (11th Cir. 2005). A stay would permit the Court to decide if Plaintiff has standing to challenge those portions of Plant City's adult-use scheme that did not serve as the basis for the permit's

rejection.[1]

*A. Procedural Matters*

Plant City has filed two separate motions to dismiss, one before the ordinance's revision and one after, both wielding the same three procedural devices, Rules 12(b)(1), 12(b)(6), and 56 (docs. 14 and 40). Despite citing all three rules, Plant City's aim is mainly jurisdictional, making Rule 12(b)(1) the operative guide. That rule allows a party to go outside the pleadings and challenge the court's jurisdiction by presenting testimony or affidavits, like Plant City has done here. *See Lawrence v. Dunbar,* 919 F.2d 1525, 1528-29 (11th Cir. 1990) (Rule 12(b)(1) permits two methods of attack, facial and factual; a factual one encompasses matters outside the pleadings, such as testimony and affidavits); 5B WRIGHT & MILLER FEDERAL PRACTICE AND PROCEDURE § 1350 n. 13 (3d ed. 2004)(citing cases using Rule 12(b)(1) to address mootness questions). Furthermore, Rule 12(b)(1), unlike for motions under Rules 12(b)(6) and 56, offers the court the ability to weigh the jurisdictional evidence because the court's "very power" to hear the case is the critical issue. *Lawrence* at 1529. In short, no presumptive truthfulness attaches to the Plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating the merits of the jurisdictional dispute. *Lawrence, Id*.[2]

---

[1] This report and recommendation covers four motions United States District Judge Steven D. Merryday referred to me for a report and recommendation pursuant to his authority under 28 U.S.C. § 636 and Local Rule 6.01(b): Plaintiff's verified motion for preliminary injunction (doc. 6); Plant City's motion to dismiss complaint or in the alternative motion for summary judgment (doc. 14); Plant City's emergency amended motion to dismiss or in the alternative motion for summary judgment (doc. 40; note: doc. 41 is the same as doc. 40). *See* orders of referral at docs. 10, 16, and 43.

[2] Considering the Rule 12(b)(1) motion before the Rule 12(b)(6) challenge follows the preferred approach because the Rule 12(b)(1) motion questions the ability of the court to hear the dispute. *Jones v. State of Georgia,* 725 F.2d 622, 623 (11th Cir. 1984) (when court confronted

*B. Background*

Plaintiff attacks a late 1970s regulatory scheme. This ordinance, among other demands, prohibits locating "any adult material store, adult theater, specified cabaret, or adult photographic or modeling studio withing 1,000 feet of any other such regulated use." *See* Plant City Code at § 102-1226(b) at doc. 10-2; doc. 40-2 at ¶ 5.[3] During the last few years city officials considered revising the adult-use code, but their efforts were intermittent and inconsequential until March 2005 when Plant City retained an outside expert to review the ordinance and advise accordingly. *See* doc. 40-2, ¶¶ 5, 7-17).

A month after the city hired its expert, the Plaintiff applied for an adult-use permit. Claiming to be the lessor of a former garage at 4350 U.S. Highway 92 East, a spot at the city's outskirts near the borders of unincorporated Hillsborough and Polk Counties, Plaintiff stated it

with 12(b)(1) and 12(b)(6) motions, the "preferable approach" is to find jurisdiction first and then decide the 12(b)(6) motion). The exception to this rule would be if the Rule 12(b)(1) facts implicate the merits of the plaintiff's cause of action; if so, then the court should find jurisdiction and deal with the objection as an attack on the merits under Rule 56. *Morrison v. Amway Corp.*, 323 F.3d 920, 924-25 (11th Cir. 2003) (Rule 56 standards should have been applied to Rule 12(b)(1) jurisdictional attack). Plant City's Rule 12(b)(1) facts are not intertwined with the merits of Plaintiff's cause of action; therefore, *Morrison's* exception does not apply.

[3] The ordinance precedes by almost a decade the Supreme Court's decision in *City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41 (1986), which upheld a zoning ordinance that prohibited adult motion picture theaters from locating within 1,000 feet of any residential zone, church, park, or school. The Court concluded the content-neutral regulation satisfied First Amendment demands because it served a substantial governmental interest while allowing reasonable alternative avenues of communication. In addition, the Court expressed that the ordinance at issue in *Renton* was aimed at the "secondary effects" of adult theaters, not at the content of the actual adult films. Courts have consistently recognized that a city's interest in protecting the quality of urban life from the secondary effects of adult businesses serves a substantial government interest." *Id*. at 50. "Secondary effects" include increased crime, lower retail trade, declining property values and declining quality of urban life, among others. *Id*. at 48. Plaintiff's constitutional arguments rest on *Renton. See* doc. 6.

planned "to sell sexually explicit (non-obscene) materials such as DVDs and adult magazines" and "offer erotic/striptease (non-obscene) dancing for the enjoyment of its patrons." *See* Complaint at doc. 1, ¶¶ 5, 6.[4] A few weeks later, the city zoning director rejected the application because the proposed site was within 1000 feet of the Showgirls Men's Club, a business just across the city line in unincorporated Hillsborough County which the official decided met the code's definition of an adult-use business. *Id.* ¶ 10, tab E.

Plaintiff, instead of seeking administrative review, filed this action under 42 U.S.C. §§ 1983 and 1988 for injunctive and declaratory relief and damages (doc. 1) and quickly moved to preliminarily enjoin the ordinance's enforcement (doc. 6). Both the complaint and the motion for preliminary injunction level a constitutional barrage at § 102-1226 of Plant City's code grounded on the First and Fourteenth Amendments. Two claims are facial attacks: the definition of "adult material store" is overbroad (doc. 1, ¶ ¶ 18, 19) and the scheme restricts speech by failing to provide sufficient reasonable alternative adult-use sites (doc. 1, ¶ 15).[5] The remaining two claims are as-applied challenges that assail the zoning director's grounds for denial: the definition of "specified cabaret" is both unconstitutionally vague and overbroad (doc. 1, ¶ 14) and the city's attempt to classify Showgirls (which Plaintiff describes as a "bathing suit bar") as a "zoning disqualifier" or regulated adult-use business violates the First Amendment (doc. 1, ¶ ¶ 13, 17).

---

[4] Although Plaintiff claimed to be the lessor when it filed its permit application, it signed a five-year lease on the property a few days after filing its complaint (doc. 44-4).

[5] Plaintiff abandoned its claim that § 102-1226(e)(1) and (2) constituted an impermissible prior restraint on free speech for failing to give a definite, fixed, and reasonable period of time to act upon and issue a final ruling" on an application for a permit. The city code, as Plant City points out, sets time limits for deciding applications.

A couple of months after Plaintiff filed the complaint, the city commission substantially revised its adult-use code based on its expert's recommendations. Those changes implicate Plaintiff's complaints about the previous ordinance. "Specified cabaret," which the old code defined as any business featuring "topless dancers, go-go dancers, exotic dancers, strippers, male or female impersonators, or similar entertainers," became "*special* cabaret" with an altered definition that omitted those terms. The new definition confined regulatory authority to a business where the "'primary entertainment' is distinguished ... by an emphasis on the exhibiting of 'specified sexual activities' or 'specified anatomical areas' for observation by customers therein," among other parameters (*see* old ordinance at doc. 10-2, p. 3 versus new ordinance at doc. 40-3, p. 14). "Adult material store," formerly defined as any establishment "which sells or rents adult material and either the gross income from the sale and rental ... comprises more than ten percent of the gross income ... at the establishment" or the "adult material offered for sale or rental comprise more than twenty-five percent ... of the items publicly displayed ... as stock in trade," now became "adult media store." *See* doc. 10-2, p. 1. Moreover, the new ordinance defined "adult media store" more precisely than the old "adult material store": (1) more than twenty-five percent of the gross public floor area is devoted to sexually oriented media; or (2) more than twenty-five percent of the stock in trade consists of sexually oriented media; or (3) is advertised, marketed or holds itself out in any forum as "XXX," "adult," "sex," or otherwise as a sexually oriented business (doc. 40-3, p. 12). Lastly, and particularly applicable here, the new regulation clearly looked beyond its borders for the secondary effects of adult businesses. Thus, the ordinance's distance limitations did not end at the city limits (doc. 40-3, pp. 7-9).

Given these changes, Plant City moved to dismiss the complaint. The city contends the

revisions render the action moot and Plaintiff lacks standing to raise facial challenges to the ordinance beyond those encompassed in the zoning director's rejection (docs. 40-1, ¶¶ 5-7; doc. 14, p. 5-10). Plaintiff rejects these claims saying it has standing and exceptions to the mootness doctrine apply. Namely, the city acted in bad faith, and its rights had vested. Besides, its claim for damages survives the city's mootness challenge (doc. 44).

*C. Discussion*

Both standing and mootness principles are grounded on the case-or-controversy requirements imposed by Article III, § 2 limiting the exercise of judicial power. *Friends of Earth v. Laidlaw Environ. Servs.,* 528 U.S. 167, 180 (2000); *Coalition for Abolition of Mar. v. City of Atlanta,* 219 F.3d 1301, 1309 (11th Cir. 2000). Despite their mutual genesis, the two doctrines differ in their application. For standing, the plaintiff bears the burden for demonstrating he has suffered an "injury in fact" which is "fairly traceable" to the actions of the defendant, and that the injury will likely be redressed by a favorable decision. *Bennett v. Spear*, 520 U.S. 159, 162 (1997); *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560-561 (1992). Mootness seizes on the temporal aspects of standing; namely, a plaintiff's requisite stake in the controversy generally must continue throughout the life of the lawsuit. *Friends of Earth,* 528 U.S. at 190. When the asserted issues are no longer "live" or the parties lack a legally cognizable interest in the outcome, the case becomes moot. *Powell v. McCormack,* 395 U.S. 486, 496 (1969); *Coalition for Abolition of Mar.,* 219 F.3d at 1309. Any decision in these circumstances would constitute an advisory opinion. *National Advertising Co. v. City of Miami*, 402 F.3d 1329, 1332 (11th Cir. 2005). However, in contrast to standing, the party asserting mootness bears "the heavy burden of persuading the court that the challenged

conduct cannot reasonably be expected to start up again." *Wilderness Watch v. Mainella*, 375 F.3d 1085, 1090 (11th Cir. 2004) quoting *Adarand Constructors, Inc. v. Slater*, 528 U.S. 216, 222 (2000). Because Plant City's revisions moot out most of Plaintiff's claims, this report covers mootness first and then addresses the standing issues.

*1. mootness*

Amending a challenged zoning ordinance, like Plant City's commission did here, often gives rise to a mootness claim. Generally, and as the Eleventh Circuit has emphasized recently and repeatedly, such legislative action moots the legal complaints about the legitimacy of the repealed law. *National Advertising*, 402 F.3d at 1332-33; *Seay Outdoor Advertising v. City of Mary Esther*, 397 F.3d 943, 946-947 (11th Cir. 2005) ("Constitutional challenges to statutes are routinely found moot when a statute is amended or repealed")); *Coral Springs Street Systems, Inc., v. City of Sunrise*, 371 F.3d 1320, 1328-29 (11th Cir. 2004) (same); *Naturist Soc'y, Inc. v. Fillyaw*, 958 F.2d 1515 (11th Cir. 1992) ("where a law is amended so as to remove its challenged features, the claim for injunctive relief becomes moot as to those features"). Plaintiff recognizes all this but argues an exception to this rule applies – vested rights.[6]

---

[6] Another recognized exception to general mootness rule is the doctrine of voluntary cessation. Namely, the voluntary cessation of purportedly offensive conduct will only moot out litigation if it is clear that the defendant has not changed course simply to deprive the court of jurisdiction. Hence, the reviewing court must satisfy itself that the allegedly wrongful behavior is not reasonably expected to recur. *National Advertising*, 402 F.3d at 1333. Plaintiff does not argue the voluntary cessation doctrine applies. Irrespective, the Plant City Commission passed a resolution saying the city would not return to the challenged scheme. And the Eleventh Circuit has observed courts are "more apt to trust public officials than private defendants to desist from future violations." *Coral Springs*, 371 F.3d at 1330 quoting 13A WRIGHT & MILLER FEDERAL PRACTICE AND PROCEDURE § 3533.7 (2d ed. 1984). Voluntary cessation has no application here.

To claim a vested right, Plaintiff must show either it reasonably and detrimentally relied on existing law (equitable estoppel) or the city acted in "a clear display of bad faith." *Seay Outdoor Advertising*, 397 F.3d at 947 quoting *City of Sunrise*, 371 F.3d at 1329. Such rights are not created easily: it is a "right that so completely and definitely belongs to a person that it cannot be impaired or taken away without the person's consent." *City of Sunrise*, 371 F.3d at 1333. Whether a right to a permit has vested is a question of state law. *Id.* In *City of Sunrise*, the Eleventh Circuit exhaustively reviewed Florida law and found only two circumstances creating an enforceable entitlement in the face of subsequent changes in the law – equitable estoppel and the "less common" occurrence of a "clear display of bad faith." *Id* at 1344. Telling is the Eleventh Circuit's observation that "no Florida court has ever found a vested right to exist in a sign permit or similar entitlement." *Id.* Plaintiff does not break this trend.

Plaintiff's vested rights arguments can be summarized as these: (1) it relied on the old ordinance and its conclusions about the ordinance's legality and reach (or more precisely, the perceived illegalities and limits of the applicable provisions); (2) it invested in a lease assuming zoning authorities would issue a permit (namely, that its opinions about the ordinance's illegalities were correct); and (3) throughout its discussions with zoning officials, these officials never intimated the city contemplated revising its adult-use scheme (assuming these officials had a duty to act otherwise). None of Plaintiff's contentions satisfy Florida's equitable estoppel arguments. The theory of equitable estoppel, as *City of Sunrise* points out, is "nothing more than an application of the rules of fair play." *Id* quoting *Town of Largo v. Imperial Homes Corp.,* 309 So.2d 571, 573 (Fla. 2nd DCA 1975). The reason is that citizens are entitled to rely on the

assurances of zoning authorities and these authorities are bound by their "words or deed." *Id.* [7]

Stripped to their logical core, Plaintiff's detrimental reliance claims are absurd. No zoning official ever assured Plaintiff its permit would be approved. To the contrary, the city timely rejected the application. Undaunted, the Plaintiff boldly signed a lease, shelled out over $10,000 in deposits, rent, and sales tax, and assumed liability for more. Simply put, the Plaintiff ignored the official's "words" and instead detrimentally relied on the assumed merits of its own opinions. Likewise misplaced is Plaintiff's claim about the city's duty to keep an applicant informed about a relevant ordinance, an argument it makes without any citation of authority. Zoning authorities had no duty to Plaintiff to warn, explain, or hint the city's managers were considering updates to the adult-use code. Equitable estoppel has no application here, and Plaintiff fails to show its rights vested with the old ordinance. Accordingly, Plaintiff's claims for declaratory and equitable relief are moot.

Plaintiff's claim for damages, however, is a different matter. A claim for damages almost always avoids a mootness challenge as long as the claim remains viable and not so insubstantial. *Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 7-9 (1978); *Powell v McCormack*, 395 U.S. 486, 496-500 (1969); *Crown Media, L.L.C. v. Gwinnett County*, 380 F.3d 1317, 1324-25 (11th Cir. 1317); *See generally* 13A WRIGHT & MILLER FEDERAL PRACTICE AND PROCEDURE § 3533.3 (2d ed. 1984). Plaintiff's claims, at least at this juncture, meet this test.[8]

---

[7] In the *City of Sunrise*, the court summarizes examples of "unfair dealing." These involve plaintiffs who have invested considerable sums in good faith reliance on zoning decisions or grants of permits only to have the authorities rescind or reconsider previous actions. *Id.* Nothing like that occurred here.

[8] This is essentially a Rule 12(b)(6) analysis. Hence, the Court presumes all well-pleaded allegations are true, resolves all doubts in the Plaintiff's favor, and views the pleading in

*2. standing*

Plant City, citing *Granite State Outdoor Adver., Inc. v. City of Clearwater*, 351 F.3d 1112 (11th Cir. 2003) ("*Clearwater*"), urges the Plaintiff's standing is limited to those portions of the old ordinance supporting the administrative ruling. Put another way, Plaintiff lacks standing to facially challenge other parts of the ordinance inapplicable to the zoning director's decision. A subsequent Eleventh Circuit panel disagreed with the *Clearwater* panel's standing analysis when confronted with overbreadth challenges. *Tanner Adver. Group, L.L.C., v. Fayette County*, 411 F.3d 1272 (11th Cir. 2005). The *Tanner* panel concluded precedent prior to *Clearwater* dictated that "once a plaintiff could demonstrate that it suffered an injury in fact as to one portion of a statute governing speech, the plaintiff gained standing to challenge the statute as a whole." *Tanner*, 411 F.3d at 1276. Given the inconsistency, the *Tanner* panel has vacated its decision and the matter will be heard *en banc*. *Tanner*, 429 F.3d 1012 (11th Cir. 2005) (granting rehearing *en banc* and vacating panel decision at 411 F.3d 1272). Accordingly, I recommend staying the matter until the Eleventh Circuit decides *Tanner*.

---

the light most favorable to the non-moving party, namely, the Plaintiff. *Jackson v. Birmingham Bd. Of Educ.*, ____ U.S. ____, 125 S.Ct. 1497, 1502-03 (2005). Nonetheless, per my invitation in the hearing notice to discuss damages, Plaintiff's counsel produced at oral argument an "expense" sheet totaling over $50,000. The bulk of these are legal fees and costs associated with lawsuit (*see* Court's ex. 4). Frankly, none of the listed items would be considered damages under § 1983's scheme. Therefore, any damages Plaintiff suffered any purported constitutional deprivation are likely nominal, but that is enough to avoid mootness. WRIGHT, § 3533.3 n. 10. Despite this, I have considered whether the claim for damages should be considered on the merits by converting Plant City's motion to dismiss under Rule 12(b)(6) to a Rule 56 summary judgment motion. *Id* (commenting damage claims should be evaluated on the merits and not on mootness grounds). However, at this early stage of the litigation, before any meaningful discovery has occurred, this seems unwise. Plaintiff's contention the City constitutionally erred by finding Showgirls an appropriate "zoning disqualifier" under the old ordinance is a disputed factual issue.

*3. remaining issues*

Lastly, Plant City maintains Plaintiff's complaint should be dismissed because it did not properly exhausted its administrative remedies under Plant City's Code. In particular, the city asserts Plaintiff "voluntarily failed to take advantage of its opportunity to appeal the zoning decision to the City's Board of Adjustment." *See* doc. 14, p. 4. But as Plaintiff responds, civil rights litigants are not required to exhaust their administrative remedies. *See Patsy v. Board of Regents*, 457 U.S. 496, 500-501 (1982)(exhaustion not a prerequisite to a § 1983 action); *Wilson v. Florida Board of Regents*, 694 F.2d 239 (11th Cir. 1982).

*D. Conclusion*

For the reasons stated, Plaintiff's requests for declaratory and equitable relief are moot. And while its claims for damages are not, any determination of those claims should be stayed pending the Eleventh Circuit's *en banc* decision in *Tanner* so that Plaintiff's standing to facially challenge the old ordinance can be resolved. Accordingly, it is

RECOMMENDED:

1. Plaintiff's verified motion for preliminary injunction (doc. 6) be denied.

2. Plant City's motion to dismiss complaint or in the alternative motion for summary judgment (doc. 14) and Plant City's emergency amended motion to dismiss or in the alternative motion for summary judgment (doc. 40; note: doc. 41 is the same as doc. 40) be granted as to Plaintiff's claims for declaratory and injunctive relief; in all other respects, the motions should be denied.

3. The matter be stayed pending the Eleventh Circuit's *en banc* decision in *Tanner Advertising Group L.L.C. v. Fayette County, Georgia, Case No. 04-13210.*

IT IS REPORTED at Tampa, Florida on December 21, 2005.

Mark A. Pizzo
MARK A. PIZZO
UNITED STATES MAGISTRATE JUDGE

**NOTICE TO PARTIES**

Failure to file and serve written objections to the proposed findings and recommendations contained in this report within ten (10) days from the date it is served on the parties shall bar an aggrieved party from a *de novo* determination by the District Court of issues covered in the report, and shall bar the party from attacking on appeal factual findings in the report accepted or adopted on appeal by the District Court except upon grounds of plain error or manifest injustice. 28 U.S.C. § 636(b)(1)(C); Local Rule 6.02; *Nettles v. Wainright*, 677 F.2d 404 (5th Cir. 1982) (*en banc*).

cc: Counsel of Record